UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATT O'BRIEN, STACIE O'BRIEN, INDIVIDUALLY AND D/B/A O'BRIEN CRAB COMPANY | CIVIL ACTION |
| VERSUS | NO. 19-13204 |
| C.F. GOLLOTT AND SON SEAFOOD, INC., D'IBERVILLE COLD STORAGE, INC., GOLLOTT BOAT, LLC, BILOXI DOCK AND ICE, LLC, GOLLOTT INVESTMENTS, LLC, AND TIGER PASS SEAFOOD, LLC | SECTION "R" (5) |

**ORDER AND REASONS**

Before the Court is plaintiffs' motion to remand this matter to state court.[1] Because a substantial federal issue does not exist, the Court grants the motion.

**I.  BACKGROUND**

This case arises from a business dispute. Matt O'Brien operated a commercial seafood dock in Venice, Louisiana.[2] He alleges he was approached by a representative of Gollott with a business proposal, to which O'Brien agreed.[3] Under the proposal, O'Brien and Gollott created a limited

---

[1]  R. Doc. 9.
[2]  *See* R. Doc. 1-1 at 3 ¶¶ VI, VIII.
[3]  *Id.* at 3 ¶ IX.

liability corporation entitled "Tiger Pass Seafood, LLC."[4] The O'Briens and Gollott each took a fifty-percent ownership interest in Tiger Pass.[5] Gollott supplied the necessary capital to Tiger Pass, and the O'Briens were to be in charge of the dock's day-to-day operations.[6]

Shortly after the formation of Tiger Pass, the BP Deepwater Horizon spill occurred.[7] The spill had catastrophic effects on the seafood industry in Louisiana.[8] Following the spill, the relationship between Gollott and O'Brien became contentious.[9] Gollott wanted Tiger Pass to close in the wake of the spill, but O'Brien insisted on remaining open for business.[10] In 2011, the parties entered an agreement under which O'Brien would sell his interest in Tiger Pass, in exchange for which he would receive ten percent of the any BP settlement above $500,000 attributable to 2010-2011.[11]

Both plaintiffs and Tiger Pass filed claims against BP following the Deepwater Horizon spill. Both were originally part of the Class Action Settlement Agreement approved by the Court in MDL 2179, the MDL that

---

[4] *Id.* at 4 ¶ XI.
[5] *Id.*
[6] *Id.* at 4 ¶ X.
[7] R. Doc. 1-1 at 4 ¶ XII.
[8] *Id.*
[9] *Id.* at 6 ¶ XXVI.
[10] *Id.* at 6 ¶ XXV.
[11] *Id.* at 6 ¶ XXVII.

oversaw the various lawsuits against BP following the Deepwater Horizon spill.[12] Plaintiffs ultimately resolved their claims in the class through the Court Supervised Settlement Program.[13] Tiger Pass, however, opted out of the MDL settlement class, reached a separate settlement with BP through a neutral, and voluntarily dismissed its claim against BP.[14] Tiger Pass received a $2 million settlement for its claims.[15]

Plaintiffs assert that Tiger Pass and Gollott "falsely structured [their] claim to BP so as to enhance its claim to the detriment of O'Brien."[16] Plaintiffs allege that Tiger Pass and Gollott asked for and used "trip tickets" of the O'Brien Crab Company, which demonstrate past sales of seafood purchases from commercial fisherman, as Tiger Pass had not operated long enough to have trip tickets of its own.[17] Plaintiffs further allege that these trip tickets were used to support Tiger Pass's claim against BP, as they were used as evidence of lost profits.[18] But plaintiffs maintain that Tiger Pass had no lost sales as it selected to shut down between 2012 and 2017.[19] The

---

12     *See* MDL 2179, R. Docs. 6418 & 6430.
13     *See* MDL 2179, R. Doc. 23560.
14     *See* R. Doc. 14 at 5; *see also* MDL 2179, R. Doc. 24584.
15     R. Doc. 1-1 at 4 ¶ XV.
16     R. Doc. 1-1 at 5 ¶ XVII.
17     *Id.* at 5 ¶¶ XVIII-XIX.
18     *Id.* at 5 ¶ XIX.
19     *Id.* at 5 ¶ XVI.

O'Briens therefore claim that the $2 million should rightfully be paid to the O'Brien Crab Company.[20]

In the alternative, plaintiffs allege that Gollott took actions such as withholding capital and equipment from Tiger Pass, either to force O'Brien to agree to shut down Tiger Pass, or to sell his fifty-percent interest.[21] They further assert that when Tiger Pass ultimately settled with BP for $2 million, it improperly prorated that amount over the years 2010-2017, reducing the amount attributable to 2010-2011 to less than $500,000.[22] This had the effect of wiping out any benefit O'Brien would receive from the settlement, as his contract with Tiger Pass entitled him to only a percentage of the settlement attributable to 2010-2011 that exceeded $500,000.[23] Plaintiffs claim that Gollott and Tiger Pass therefore breached the contract by which O'Brien sold his ownership interest in Tiger Pass.[24]

Defendants removed this case to federal court.[25] Plaintiffs then filed a motion to remand, arguing that their claims sound solely in state law.[26] Plaintiffs also filed a motion to amend their complaint in which they sought,

---

20  *Id.* at 5 ¶ XX.
21  R. Doc. 1-1 at 6 ¶¶ XXII-XXV.
22  *Id.* at 7 ¶ XXX.
23  *Id.* at 7 ¶ XXXI.
24  *Id.* at 8 ¶ XXXIII.
25  *See* R. Doc. 1.
26  R. Doc. 9.

among other things, to withdraw their first claim.[27] This motion was granted.[28]

## II. LEGAL STANDARD

Federal district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim arises under federal law must be determined by referring to the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). This means that the federal question must appear on the face of the complaint. *See Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997). Because defendants may remove a case to federal court only if the plaintiffs could have brought the action in federal court at the outset, "the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808 (citation omitted).

---

[27] R. Doc. 22.
[28] R. Doc. 30.

## III. DISCUSSION

### A. Federal Issue

Plaintiffs brought two claims in their initial complaint: (1) a claim that Tiger Pass's BP settlement was fraudulently based on O'Brien Crab Company's food tickets, and therefore should have been paid to plaintiffs, and (2) a claim, in the alternative, that defendants breached the contract between O'Brien and Gollott by not properly allocating the $2 million settlement across 2011-2017. The parties agree that the second claim of breach is solely a state law claim and does not give rise to federal question jurisdiction.[29] And although plaintiffs have since amended their complaint to withdraw the first claim, "a court looks at the claims in the state court petition as they existed at the time of removal when determining whether federal jurisdiction is present for the purposes of removal." *Bouie v. Equistar Chems LP*, 188 F. App'x 233, 238-39 (5th Cir. 2006). The Court therefore considers whether plaintiffs' first claim in their state court petition at the time of removal provides a basis for federal jurisdiction.

Generally, to invoke federal jurisdiction, a federal question must appear on the face of the complaint. *See Torres*, 113 F.3d at 542. Because

---

[29] *See* R. Doc. 14 at 1.

6

plaintiffs do not assert any claims under federal law, federal jurisdiction exists only if an exception to the well-pleaded complaint rule applies.

Defendants argue that although plaintiffs' claim is couched in state law, the claim necessarily raises a federal issue. But the mere presence of a federal issue "does not automatically confer federal question jurisdiction." *Merrell Dow*, 478 U.S. at 813. In such circumstances, federal jurisdiction will exist only "if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The Supreme Court has admonished that such cases constitute a "slim category." *Id.*

A federal issue is "necessarily raised" only when it requires application of federal law to the facts of a plaintiff's case. *Gunn*, 568 U.S. at 259 (noting that "resolution of a federal patent question is 'necessary' to [the plaintiff's] case"). Defendants characterize plaintiffs' claim as a "collateral attack" on the Deepwater Horizon MDL Settlement Procedure, and specifically the Court Supervised Settlement Program. Defendants' argument is that plaintiffs' claim attacks the O'Briens' own settlement with BP through the Court Supervised Settlement Program, over which a federal court retains

7

exclusive jurisdiction, because plaintiffs' claim suggests that they should have been paid more by BP.

Plaintiffs' claim does not attack the BP settlement. Plaintiffs take no issue with their settlement with BP, which was part of the Court Supervised Settlement Program and Class Action Settlement Agreement. Rather, plaintiffs' claim is that defendants fraudulently used the O'Briens' trip tickets to provide a benefit to themselves via a lawsuit that was explicitly *not* part of the Class Action Settlement Agreement. Indeed, plaintiffs do not sue any of the parties covered by the class-wide release in the economic settlement of its BP claims, such as BP or its contractors. Nor do plaintiffs sue the Economic Settlement Claims Administrator, arguing that their claim was miscalculated. Rather, plaintiffs are suing the defendants for fraudulently using their trip tickets to benefit themselves.

Indeed, resolving plaintiffs' claim does not require the application of federal law. Under Louisiana law, "[t]o prove fraud, one must show: (1) an intent to defraud, and (2) actual or potential loss or damages." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 438 (5th Cir. 2000). Louisiana courts do not look to federal law to determine either of these elements. A state court can determine whether an intent to defraud was present by looking to whether defendants wrongfully used plaintiffs' trip

tickets for their own gain, and can determine any possible resulting damages from that conduct. At bottom, this is simply a vanilla state law fraud action that shares a factual backdrop with the BP Deepwater Horizon oil spill and subsequent MDL litigation. And because plaintiffs' claim is a state court action that does not require the application of federal law, the Court cannot find a federal issue is "necessarily raised."

Because no federal issue was necessarily raised at the time of removal, the Court lacks jurisdiction and must remand the case to state court. Absent a federal issue, the Court need not reach defendants' arguments regarding whether such an issue would be in dispute, substantial, or capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

### B. Request for Attorneys' Fees

Plaintiffs also request attorneys' fees and costs. Under 28 U.S.C. § 1447(c), a federal court that orders remand of an action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "There is no automatic entitlement to an award of attorney's fees" if the court determines that the removal was legally improper; instead, the decision whether to award attorneys' fees is

left to the discretion of the trial court. *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

In order to determine whether an award of attorneys' fees is appropriate, the court considers "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.* at 293. Here, defendants had an objectively reasonable basis to remove this case based on the authorities cited in their Notice of Removal and their oppositions to plaintiffs' motion to remand. While defendants' arguments against removal are ultimately unpersuasive, they are not so unreasonable as to warrant an award of attorneys' fees to plaintiff. *Cf. id.* at 293 (declining to award attorneys' fees to non-removing party even though removal was legally improper, because removing party "could conclude from th[e] case law that its position was not an unreasonable one").

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion to remand.

New Orleans, Louisiana, this __20th__ day of March, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE